# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2981-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |    Plaintiff-Respondent, |
| |  v. |
| | Tabitha A. Scruggs, |
| |    Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | February 23, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 13, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | Circuit |
|  COUNTY: | Racine |
|  JUDGE: | Allan B. Torhorst |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | ABRAHAMSON, J. dissent (Opinion filed). |
|  NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there was a brief and oral argument by *Dustin C. Haskell*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Jeffrey J. Kassel*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2981-CR
(L.C. No. 2014CF7)

STATE OF WISCONSIN     :     IN SUPREME COURT

**State of Wisconsin**

     **Plaintiff-Respondent,**

     **v.**

**Tabitha A. Scruggs,**

     **Defendant-Appellant-Petitioner.**

**FILED**

FEB 23, 2017

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. Petitioner, Tabitha Scruggs ("Scruggs"), seeks review of a published court of appeals decision denying her motion for postconviction relief.[1] The court of appeals determined that Scruggs failed to demonstrate beyond a reasonable doubt that imposing a now mandatory $250 DNA surcharge for a single felony conviction constitutes a punishment, violating the prohibition against ex post facto laws set forth in the United States and Wisconsin Constitutions.

---

[1] State v. Scruggs, 2015 WI App 88, 365 Wis. 2d 568, 872 N.W.2d 146 (affirming judgment and order entered by the circuit court for Racine County, Allan B. Torhorst, J., presiding).

¶2    Specifically, Scruggs contends that the imposition of this single $250 DNA surcharge is punitive for ex post facto purposes because it was discretionary when she committed the felony offense but mandatory when she was sentenced.  She asserts that the statutory amendment making mandatory the imposition of the $250 DNA surcharge at sentencing constitutes an unconstitutional ex post facto law because it retroactively imposes punishment on those who committed a crime before the amendment's January 1, 2014 effective date.

¶3    Like the court of appeals, we conclude that Scruggs has not met her burden of establishing beyond a reasonable doubt that the amended statute is unconstitutional.  She has failed to show that the mandatory imposition of this DNA surcharge, which was discretionary at the time she committed the single felony offense, is punitive in either intent or effect and thus violative of the ex post facto prohibition.

¶4    Accordingly, we affirm the decision of the court of appeals, denying Scruggs' postconviction motion to vacate the $250 DNA surcharge.

I

¶5    The underlying facts in this case are not in dispute. On December 30, 2013, Scruggs was charged with one count of burglary as a party to a crime, contrary to Wis. Stat. §§ 943.10(1m)(a) & 939.05(1) (2011-12).[2]  She pleaded no contest

_____

[2] Wis. Stat. § 943.10(1m)(a) provides:

(continued)

to the charged offense on April 1, 2014, and was sentenced on June 9, 2014.

¶6   The circuit court sentenced Scruggs to 18 months of initial confinement and 18 months of extended supervision. Scruggs' sentence was stayed and she was placed on probation for three years.  The judgment of conviction provided that Scruggs submit to a DNA sample and pay a $250 DNA analysis surcharge.

¶7   At the time Scruggs committed the offense on December 30, 2013, Wis. Stat. § 973.046 (2011-12) was in effect.  It provided that the decision of whether to impose a DNA surcharge was within the circuit court's discretion:

> (1g) Except as provided in sub. (1r), if a court imposes a sentence or places a person on probation for a felony conviction, the court may impose a deoxyribonucleic acid analysis surcharge of $250.

¶8   On January 1, 2014, Wis. Stat. § 973.046(1r)(a) (2013-14) ("2014 Amendment") took effect pursuant to  2013 Wis. Act

---

> (1m) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class F Felony:
>
>> (a)  Any building or dwelling.

Wis. Stat. § 939.05(1) provides:

> Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

3

20. The Act specified that the mandatory DNA surcharge would apply to sentences imposed on or after January 1, 2014, regardless of when the underlying offense occurred. 2013 Wis. Act 20, §§ 9326, 9426. Thus, when Scruggs was sentenced on June 9, 2014, the amended statute made the imposition of a DNA surcharge mandatory:

> (1r) If a court imposes a sentence or places a person on probation, the court shall impose a deoxyribonucleic acid analysis surcharge, calculated as follows:
>
> (a) For each conviction for a felony, $250.
>
> (b) For each conviction for a misdemeanor, $200.

Wis. Stat. § 973.046(1r) (2013-14).

¶9 Scruggs filed a postconviction motion seeking to vacate the $250 DNA surcharge. She argued that imposing this mandatory DNA surcharge violated the Ex Post Facto Clauses of the United States and Wisconsin Constitutions because imposition of the DNA surcharge was discretionary at the time she committed the felony offense. According to Scruggs, the statutory change from a discretionary DNA surcharge to a mandatory DNA surcharge makes the 2014 Amendment punitive for a defendant sentenced for a single felony offense after the effective date of the 2014 Amendment for an offense committed before it.

¶10 Scruggs argued that the circuit court instead should have applied Wis. Stat. § 973.046 (2011-12) as it existed at the time she committed the offense and exercised its discretion in determining whether to impose a $250 DNA surcharge. The circuit

4

court concluded that it was required to impose the mandatory $250 DNA surcharge and denied Scruggs' postconviction motion.[3]

¶11 The court of appeals affirmed the circuit court, albeit with a different rationale. State v. Scruggs, 2015 WI App 88, ¶19, 365 Wis. 2d 568, 872 N.W.2d 146. It determined that Scruggs "has failed to demonstrate beyond a reasonable doubt that the $250 DNA surcharge that the circuit court imposed on her for a single felony conviction constitutes a punishment and, thus, [did not] violate[] the prohibitions against ex post facto laws in the U[nited] S[tates] and Wisconsin Constitutions." Id.

II

¶12 Whether a statute violates the Ex Post Facto Clauses of the Wisconsin and United States Constitutions is a question of law that this court reviews independently of the determinations rendered by the circuit court and the court of appeals. State v. Haines, 2003 WI 39, ¶7, 261 Wis. 2d 139, 661 N.W.2d 72. There is a strong presumption that legislative enactments are constitutional. Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶76, 350 Wis. 2d 554, 835

---

[3] The circuit court incorrectly reasoned that the 2014 Amendment was in effect when Scruggs committed the offense because the amended statute had been published. The State concedes that the circuit court erred in concluding that the 2014 Amendment was in effect when Scruggs committed the offense. However, the State continues to maintain that the retroactive application of the 2014 Amendment is not an ex post facto violation because it is not punitive.

N.W.2d 160. Scruggs has the burden of establishing beyond a reasonable doubt that the challenged legislation is unconstitutional. Chappy v. Labor & Indus. Review Comm'n, Dep't of Indus., Labor & Human Relations, 136 Wis. 2d 172, 184-85, 401 N.W.2d 568 (1987).

¶13 A party challenging the constitutionality of a statute "bears a heavy burden." State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90 (citing State v. Cole, 2003 WI 112, ¶11, 264 Wis.2d 520, 665 N.W.2d 328). "It is insufficient for the party challenging the statute to merely establish either that the statute's constitutionality is doubtful or that the statute is probably unconstitutional." Id. "Instead, the party challenging a statute's constitutionality must 'prove that the statute is unconstitutional beyond a reasonable doubt.'" Id. (quoting Cole, 264 Wis. 2d 520, ¶11).

III

¶14 At the outset we observe the basic premise that a statute "which makes more burdensome the punishment for a crime[] after its commission" is prohibited by the Ex Post Facto Clauses of the United States and Wisconsin Constitutions.[4] State

---

[4] Scruggs does not argue that she has greater protection under the Ex Post Facto Clause of the Wisconsin Constitution than she has under the United States Constitution. She acknowledges that this court generally looks to United States Supreme Court decisions construing the Ex Post Facto Clause of the United States Constitution as a guide to construing the Ex Post Facto Clause of the Wisconsin Constitution. See State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994).

(continued)

6

v. Thiel, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (citing Collins v. Youngblood, 497 U.S. 37, 42 (1990). Scruggs contends that the imposition of a $250 DNA surcharge is punitive because it was discretionary when she committed the crime but mandatory when she was sentenced. She asserts that the statutory amendment making mandatory the imposition of a $250 DNA surcharge at sentencing constitutes an unconstitutional ex post facto law because it retroactively imposes punishment to those who committed a crime before the amendment's January 1, 2014 effective date.

¶15 The State does not dispute Scruggs' contention that if the DNA surcharge is punitive, amending the statute to make mandatory what previously was discretionary is an ex post facto violation with respect to defendants who committed their offense before the effective date of the amendment. See Lindsey v. Washington, 301 U.S. 397, 400 (1937) (concluding it is an ex post facto violation to apply a new criminal penalty where "[t]he effect of the new statute is to make mandatory what was before only the maximum sentence.").

---

The Ex Post Facto Clause of the United States Constitution is found in Article I, Sections 9 and 10. Section 9 provides: "No bill of attainder or ex post facto Law shall be passed." Section 10 provides: "No state shall . . . pass any . . . ex post facto Law . . . ."

In the Wisconsin Constitution, the Ex Post Facto Clause is found in Article 1, Section 12, which provides: "No . . . ex post facto law . . . shall ever be passed . . . ."

¶16 In determining whether a statute is punitive for ex post facto purposes, we apply the "intent-effects" test set forth in Hudson v. United States, 522 U.S. 93 (1997). See In re Commitment of Rachel, 2002 WI 81, ¶38, 254 Wis. 2d 215, 647 N.W.2d 762. If we determine that the legislative intent of the 2014 Amendment was to impose punishment, the law is considered punitive and our inquiry ends there. See City of South Milwaukee v. Kester, 2013 WI App 50, ¶22, 347 Wis. 2d 334, 830 N.W.2d 710. However, if we determine that the legislature's intent was to impose a civil and nonpunitive regulatory scheme, we must determine next whether the 2014 Amendment is so punitive in form and effect as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." Rachel, 254 Wis. 2d 215, ¶33 (citing Hudson, 522 U.S. at 99).[5]

¶17 Determining whether the legislature intended the statute to be punitive "is primarily a matter of statutory construction . . . ." Id., ¶40. Statutory interpretation begins by examining the plain language of the statute. State ex

---

[5] The terms "form" and "effect" are used in relevant case law applying the second part of the intents-effects test without providing an analysis that distinguishes between the two terms. See, e.g., In re commitment of Rachel, 2002 WI 81, ¶¶42-43, 254 Wis. 2d 215, 647 N.W.2d 762; Hudson v. United States, 522 U.S. 93, 104 (1997); United States v. Ursery, 518 U.S. 267, 290 (1996). Likewise, the parties do not argue or differentiate between "form" and "effect." They discuss only the "effect," and do not analyze the "form" when discussing the second part of the intents-effects test. Consequently, our analysis discusses the "effects" of the surcharge imposed.

_rel. Kalal v. Cir. Ct. for Dane Cty._, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

¶18 Accordingly, we begin our analysis of Scruggs' claim by considering whether the legislature either expressly or impliedly indicated a preference that the 2014 Amendment be considered a civil remedy or a criminal penalty. _See_ _Rachel_, 254 Wis. 2d 215, ¶32 (citing _Hudson_, 522 U.S. at 99). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." _Kalal_, 271 Wis. 2d 633, ¶45 (citations omitted).

¶19 Sections 973.046(1r)(c)-(d) (2013-14) provide:

> If a court imposes a sentence or places a person on probation, the court shall impose a deoxyribonucleic acid analysis surcharge, calculated as follows:
>
>> (c) For each conviction for a felony, $250.
>>
>> (d) For each conviction for a misdemeanor, $200.

¶20 We give "great deference" when the legislature labels a statute as a civil remedy. _Rachel_, 254 Wis. 2d 215, ¶42. Only the "clearest proof" will convince this court that a statute the legislature labeled as a civil remedy is in effect a criminal penalty. _Kester_, 347 Wis. 2d 334, ¶22 (citation omitted).

¶21 The language of the 2014 Amendment, which uses the term "surcharge" rather than "fine," reveals that the legislature intended the statute to be a civil remedy, rather than a criminal penalty. As the Seventh Circuit explained in

9

Mueller v. Raemisch, a fine is a punishment for an unlawful act that is a "substitute deterrent for prison time" and "a signal of social disapproval of unlawful behavior." 740 F.3d 1128, 1133 (7th Cir. 2014). In contrast, a fee (or in this case a "surcharge") is compensation for a service provided to, or alternatively compensation for a cost incurred by, the person charged the fee. See id.[6]

¶22 Scruggs contends that placement of the DNA surcharge within the criminal sentencing statutes reflects a legislative intent to punish. According to Scruggs, the surcharge is situated squarely within the criminal sentencing statutes, which address imposition of criminal penalties. In contrast, Scruggs argues, court costs and other non-punitive charges are addressed in Chapter 814.

¶23 Scruggs overlooks that the DNA surcharge is explicitly set forth in Wis. Stat. § 814.76(5) (2013-14), which makes a distinction between a fine imposed in a criminal action and a surcharge imposed in that action. It provides:

> Surcharges in criminal actions. In addition to any fine imposed in a criminal action, a defendant shall pay the following surcharges if applicable:
>
> (5) The deoxyribonucleic acid analysis surcharge under s. 973.046(1r).

---

[6] We observe that court costs, fees, and surcharges are all set forth in Chapter 814 of the Wisconsin Statutes. Although Mueller uses the term "fee," a "surcharge" is similarly defined as an "additional charge, tax, or cost." Random House Unabridged Dictionary 1914 (2d ed. 1993).

Wis. Stat. § 814.76(5) (2013-14). Additionally, the United States Supreme Court has determined that a forfeiture provision may be a civil remedy even though the authorizing statute is located in the criminal code. Smith v. Doe, 538 U.S. 84, 94-95 (2003) (citing United States v. One Assortment of 89 Firearms, 465 U.S. 354, 364-65 (1984)).

¶24 Although Scruggs is correct that statutory language is interpreted in the context of the statutory scheme, considering closely-related statutes, the placement of the DNA surcharge within the criminal sentencing statutes is not the only statutory context we consider. See Kalal, 271 Wis. 2d 633, ¶46. As the court of appeals explained, the 2014 Amendment is part of a larger statutory initiative to expand the state's DNA databank and "to offset the increased burden on the Department of Justice (DOJ) in collecting, analyzing, and maintaining the additional DNA samples . . . ." Scruggs, 365 Wis. 2d 568, ¶11.

¶25 Thus, we also interpret the language used in the 2014 Amendment of 973.046(1r)(a) in relation to Wis. Stat. §§ 973.046(3). In order to offset the increased burden on the DOJ in collecting, analyzing, and maintaining the additional DNA samples, the legislature imposed the mandatory surcharge on felony convictions to be deposited initially with the secretary of administration but to be used by the DOJ to offset the increased costs.

¶26 Wisconsin Stat. § 973.046(3) (2013-14) states: "All moneys collected from deoxyribonucleic acid analysis surcharges shall be deposited by the secretary of administration . . . and

11

utilized under s. 165.77." Section 165.77 sets forth the requirements that the DOJ provide for the analysis of the collected samples and maintain a state DNA databank. See Wis. Stat. § 165.77(2)(a)(1)&(3) (2013-14). When viewed in context, the imposition of a now mandatory surcharge that "is specifically dedicated to fund the collection and analysis of DNA samples and the storage of DNA profiles——all regulatory activities——evidences a nonpunitive cost-recovery intent." Scruggs, 365 Wis. 2d 568, ¶12.

¶27 Consulting legislative history further informs our interpretation. Kalal, 271 Wis. 2d 633, ¶51 (legislative history may be consulted to confirm a plain-meaning interpretation). The Legislative Fiscal Bureau memorandum regarding the 2014 Amendment recognized that DNA databanks are an important tool in criminal investigations and explained that the mandatory DNA surcharge would provide funding for the collection and analysis of DNA samples together with the maintenance of the DNA databank.[7] It further explained that "deoxyribonucleic acid testing allows a more certain and rapid identification of offenders as well as the exoneration of those wrongfully suspected or accused . . . ." Id. at 8.

¶28 Nonetheless, Scruggs argues that the intent of the 2014 Amendment is punitive because the surcharge bears no

---

[7] Legis. Fiscal Bureau, DNA Collection at Arrest and the DNA Analysis Surcharge, Paper #410 to J. Comm. on Fin. 2-3, 8 (May 23, 2013).

relation to the DNA costs created by any particular defendant. As the Seventh Circuit explained in Mueller, one basis for reclassifying a surcharge as a fine "would be that it bore no relation to the cost for which the fee was ostensibly intended to compensate." 740 F.3d at 1133.

¶29 Scruggs has the burden of showing that the amount of the surcharge imposed here demonstrates that the $250 surcharge is punitive in intent. Yet, she presents no evidence that the surcharge is meaningfully greater than the costs she caused the State to incur to collect, analyze, and curate her DNA.

¶30 The amount of the DNA surcharge for a single felony conviction suggests that the fee was not intended to be a punishment. As discussed above, it is instead intended to offset the costs associated with the collection and analysis of samples together with the maintenance of the state's DNA databank. See, e.g., In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir. 2009) ("the relatively small size of the fee . . . indicate[d] that it was not intended to have a significant retributive or deterrent value..."). The $250 DNA surcharge is consistent with the DNA fees charged in other jurisdictions, which have been considered non-punitive. See, e.g., People v. Higgins, 13 N.E.3d 169, ¶20 (Ill. App. Ct. 2014) (citing People v. Guadarrama, 955 N.E.2d 615, 618 (Ill. App. Ct. 2011) ($250)); Commonwealth v. Derk, 895 A.2d 622, 625-30, 630 n.6 (Pa. Super. Ct. 2006) ($250); State v. Brewster, 218 P.3d 249, 251 (Wash. Ct. App. 2009) ($100).

13

¶31 Scruggs asserts next that tying the surcharge to the number and type of conviction indicates that the legislature is using the surcharge to impose a penalty on more serious offenders. She reasons that if the surcharge were actually intended to offset the costs of DNA testing there would be no reason to impose a higher surcharge based on the number and type of conviction when these factors do not affect the cost of obtaining a DNA sample from a single defendant. Scruggs further argues that a higher surcharge based on the number of convictions indicates that the legislature had a punitive intent in enacting the 2014 Amendment.

¶32 In State v. Radaj, the court of appeals considered a challenge to the 2014 Amendment based upon a $1000 surcharge imposed for four felony convictions. 2015 WI App 50, ¶1, 363 Wis. 2d 633, 866 N.W.2d 758. Unlike Scruggs, Radaj was convicted of four felonies and assessed a $250 surcharge for each conviction, which totaled $1000. Id., ¶¶3-5.

¶33 The Radaj court determined that the 2014 Amendment was an ex post facto violation under the facts of that case because the multiple surcharges were punitive in effect. Id., ¶35. However, the court left for another day the issue Scruggs raises in this case. It explained that "we do not weigh in on whether the result might be different if Radaj had been convicted of a single felony carrying with it a mandatory $250 surcharge, rather than the prior discretionary $250 surcharge." Id., ¶36.

¶34 Radaj assumed without deciding that the legislative intent behind the 2014 Amendment was nonpunitive. Id., ¶16.

14

However, Scruggs relies on a portion of the court's discussion of intent, in which it reasoned that "the legislative decision to tie the amount of the surcharge to the number of convictions . . . casts doubt on legislative intent." <u>Id.</u>, ¶21.

¶35 Scruggs' reliance on <u>Radaj</u> is misplaced.[8] We assess the merits of this challenge by considering the facts of this particular case. As the court of appeals in this case explained, "since this appeal involves only a single felony

---

[8] At oral argument the State reiterated that it was not asking this court to overrule <u>Radaj</u> and again emphasized the distinctions between the two cases. It likewise stated that it was not challenging the holding in <u>State v. Elward</u>, 2015 WI App 51, 363 Wis. 2d 628, 866 N.W.2d 756, which it deemed also readily distinguishable.

In <u>Elward</u>, the court of appeals concluded that a mandatory $250 surcharge was punitive and violated the ex post facto clauses because a multi-phase rollout required circuit courts to begin imposing the surcharge on January 1, 2014. <u>Id.</u>, ¶7. However, courts had to wait 15 months——until April 1, 2015—— before they could actually order misdemeanants to provide a sample for DNA analysis. <u>Id.</u>, ¶2 (citing 2013 Wis. Act 20, § 9426(1)(am) and (bm)). As a result, Elward never had to submit to a test. <u>Id.</u>, ¶7.

The State emphasized the roll out and the fact that the defendant in <u>Elward</u> was never ordered to provide a sample, in distinguishing this case:

> <u>Elward</u> was distinguishable because of a lag in misdemeanor cases between the collection and the imposition of the surcharge and there was a 15 month gap . . . .

> In this case, Ms. Scruggs did have to provide a sample. So, there were [] direct costs attributable to Ms. Scruggs by her providing a sample that needs to be analyzed, collected and analyzed in the data bank.

conviction, Radaj does not control our decision." Scruggs, 365 Wis. 2d 568, ¶9. Unlike Radaj, which involved multiple surcharges for multiple felony convictions, this case addresses whether a single DNA surcharge for a single felony conviction is punitive.

¶36 Scruggs' reliance on the fact that the surcharge is set at a flat rate of $200 for every misdemeanor conviction and $250 for every felony conviction also fails. We agree with the court of appeals' determination that "Scruggs has pointed to nothing, other than speculation, that the disparity between the surcharges on a conviction for a felony as compared to a misdemeanor reflects that the legislature was motivated by a punitive intent." Scruggs, 365 Wis. 2d 568, ¶14; see also Mueller, 740 F.3d at 1134 ("The burden of proving that it is a fine is on the plaintiffs, and since they have presented no evidence that it was intended as a fine . . . they cannot get to first base without evidence that it is grossly disproportionate to the annual cost . . . .").

¶37 Further, we observe that the 2014 Amendment did not change the amount of the $250 DNA surcharge for felony offenders. The fact that there was no change in the amount of the surcharge for offenders convicted of a single felony suggests that there was no punitive intent in the mandatory DNA surcharge for felony offenders.

¶38 In sum, Scruggs has failed to produce evidence that a $250 DNA surcharge imposed against a defendant for a single felony conviction is unrelated to the cost for which it is

16

intended to compensate. There is no evidence that the relatively small $250 surcharge is grossly disproportionate to the cost of collecting, analyzing, and maintaining DNA specimens. We conclude that Scruggs has failed to carry her burden of demonstrating that the change from a discretionary to a mandatory surcharge for a single felony conviction committed before the effective date of the 2014 Amendment was intended as a criminal penalty.

IV

¶39 Having concluded that Scruggs failed to show that the legislature intended the DNA surcharge to be a criminal penalty, we nevertheless consider next whether the 2014 Amendment is so punitive in effect as to transform the $250 DNA surcharge into a criminal penalty. See Rachel, 254 Wis. 2d 215, ¶42. In applying the second part of the intent-effects test, we determine whether the surcharge imposed by the 2014 Amendment is "'so punitive in form and effect as to render them criminal' despite the legislature's intent to the contrary." Id. (quoting Hudson, 522 U.S. at 104). We afford the legislative preference for the civil label great deference and only the "clearest proof" will convince us that what has been denominated a civil remedy is actually a criminal penalty. Id.

¶40 As Scruggs acknowledges in her brief, although similar facts are considered when discussing punitive intent and punitive effect, each requires separate analysis. In determining whether a statute is punitive in effect, Scruggs correctly recognizes at the outset that our analysis is guided

17

by the seven factors as set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963). Curiously, however, she does not refer to the factors again when she analyzes whether the surcharge has a punitive effect here.

¶41 The seven factors are whether: (1) the 2014 Amendment involves an affirmative disability or restraint; (2) it has historically been regarded as a punishment; (3) it comes into play only on a finding of scienter; (4) its operation will promote the traditional aims of punishment-retribution and deterrence; (5) the behavior to which the 2014 Amendment applies is already a crime; (6) an alternative purpose to which it may rationally be connected is assignable for it; and (7) it appears excessive in relation to the alternative purpose assigned. Id.; see also Rachel, 254 Wis. 2d 215, ¶33. These factors provide "useful guideposts." Hudson, 522 U.S. at 99. However, they are not exhaustive nor is any one factor dispositive. Smith v. Doe, 538 U.S. at 97 (citations omitted).

¶42 We address first the factors that cut in favor of the State's argument that the 2014 Amendment is nonpunitive in effect under the facts of this case. Under the first factor, the surcharge is nonpunitive because it does not impose an affirmative disability or restraint, in contrast to imprisonment. See, e.g., Hudson, 522 U.S. at 104. Given our determination regarding intent, there is also no evidence under the second factor that the surcharge has historically been considered a punishment. See id. at 104-105 ("the payment of fixed or variable sums of money [is a] sanction which ha[s] been

18

recognized as enforceable by civil proceedings since the original revenue law of 1789.") (quoting Helvering v. Mitchell, 303 U.S. 391, 400 (1938)). The third factor also supports the State because the 2014 Amendment does not have a scienter requirement. See Rachel, 254 Wis. 2d 215, ¶51. A mandatory surcharge is imposed against any person convicted of a felony, without regard to the defendant's state of mind. See Hudson, 522 U.S. at 104.

¶43 Conversely, there is only one factor that more clearly cuts in favor of Scruggs. Under the fifth factor, the DNA surcharge applies to behavior that is already a crime, suggesting that the surcharge has the effect of punishing criminal behavior. However, this fact is insufficient to render a monetary penalty criminally punitive. Id. at 105 (citing United States v. Ursery, 518 U.S. 267, 292 (1996) ("the fact that a forfeiture statute has some connection to a criminal violation is far from the 'clearest proof' necessary to show that a proceeding is criminal.").

¶44 We turn next to factors that are disputed by the parties. The remaining factors at issue are whether: (4) the 2014 Amendment's operation will promote the traditional aims of punishment-retribution and deterrence; (6) an alternative purpose to which it may be rationally connected is assignable for it; and (7) it appears excessive in relation to the alternative purpose assigned. See Rachel, 254 Wis. 2d 215, ¶33.

¶45 This portion of our discussion regarding the effect of the 2014 Amendment is closely related to our analysis regarding

19

whether the connection between the surcharge and the costs it is intended to offset evinces a punitive legislative intent. As set forth more fully in the above discussion regarding intent, the relatively small size of a single $250 DNA surcharge indicates that it does not serve the traditional aims of punishment-retribution and deterrence. See, e.g., In re DNA, 561 F.2d at 300; see also ¶29, supra.

¶46 In considering Scruggs' claim, we observe that a surcharge need bear "only an approximate relation to the cost it is meant to offset." See Mueller, 740 F.2d at 1133. One basis for reclassifying a fee as a fine would be that it "bore no relation to the cost for which the fee was ostensibly intended to compensate." Id.

¶47 The purpose to which the surcharge is connected is to offset the increased burden on the DOJ in collecting, analyzing, and maintaining the additional DNA samples. An examination of cases cited by the parties reflects an emphasis on considering the amount of the surcharge or fee in question and asking whether there is a rational relationship between that amount and the non-punitive activities the surcharge or fee is intended to fund. For example, in Mueller, the Seventh Circuit considered the amount of the fee in light of a list of "formidable" ongoing tasks associated with the sex offender registry. 740 F.3d at 1134. Likewise, in In re DNA, the Fourth Circuit made a point of noting that the defendant "offer[ed] nothing to suggest that $250 is excessive considering the costs associated with the [DNA] database." 561 F.3d at 300.

¶48 Like these other courts, we focus on the rational connection between the amount of a fee and the costs the fee was intended to cover. Scruggs has failed to demonstrate that a $250 DNA surcharge for a single felony conviction is excessive in relation to the activities it is intended to fund. See Mueller, 740 F.3d at 1134 ("The burden of proving that it is a fine is on the plaintiffs . . . ") (internal citations omitted). Scruggs has offered nothing to suggest that the single $250 surcharge is excessive or that it bears no relation to the costs it is intended to compensate. See In re DNA, 561 F.3d at 300; see also Mueller, 740 F.3d at 1133. Thus, we have no reason to think that the $250 surcharge is excessive or lacks a reasonable relationship to the costs of collecting and analyzing the DNA samples together with maintaining DNA profiles in a statewide databank.

¶49 Scruggs has failed to show by the "clearest proof" that the $250 surcharge is excessive or that there is no rational connection between the amount of the single surcharge and the costs it is intended to compensate. We determine that Scruggs has not met her burden of demonstrating that the change from a discretionary to a mandatory surcharge for a single felony conviction that was committed before the effective date of the 2014 Amendment is so punitive in effect as to transform a single $250 DNA surcharge into a criminal penalty. See Rachel, 254 Wis. 2d 215, ¶33.

V

¶50 In sum, like the court of appeals, we conclude that Scruggs has not met her burden of establishing beyond a reasonable doubt that the amended statute is unconstitutional. She has failed to show that the mandatory imposition of this DNA surcharge, which was discretionary at the time she committed the single felony offense, is punitive in either intent or effect and thus violative of the ex post facto prohibition.

¶51 Accordingly, we affirm the decision of the court of appeals, denying Scruggs' postconviction motion to vacate the $250 DNA surcharge.

*By the Court*.-The decision of the court of appeals is affirmed.

¶52 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* An ex post facto law is any law which "makes more burdensome the punishment for a crime, after its commission . . . ." State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)).

¶53 When Scruggs committed the crime, she faced the possibility of a $250 DNA surcharge. Under the amended DNA surcharge law, Scruggs now faces the certainty of a $250 DNA surcharge.

¶54 For ex post facto purposes, the critical question is whether the mandatory DNA surcharge statute makes more burdensome the punishment for Scruggs' crime.

¶55 The law of this state (accepted by the parties and the majority opinion) is that the mandatory, per-conviction DNA surcharge statute violates the ex post facto clause when applied to a defendant convicted in a single case of multiple crimes committed prior to the effective date of the mandatory DNA surcharge statute. See State v. Radaj, 2015 WI App 50, ¶¶35-36, 363 Wis. 2d 633, 866 N.W.2d 758.[1]

¶56 In contrast, the question in the instant case is whether the mandatory DNA surcharge law requiring a circuit court to impose a single $250 DNA surcharge for the conviction of

---

[1] The majority opinion and the parties do not challenge State v. Radaj, 2015 WI App 50, 363 Wis. 2d 633, 866 N.W.2d 758. Majority op., ¶35 n.8. Instead, the majority opinion distinguishes Radaj on its facts: "Unlike Radaj, which involved multiple surcharges for multiple felony convictions, this case addresses whether a single DNA surcharge for a single felony conviction is punitive." Majority op., ¶35.

1

a single crime violates the ex post facto clause when applied to a crime committed prior to the effective date of the statute.

¶57  To me, a statute <u>mandating</u> a DNA surcharge is obviously more burdensome on a defendant than a statute granting a circuit court <u>discretion</u> to impose a DNA surcharge on a defendant. Indeed United States Supreme Court case law supports this approach.  <u>See</u> <u>Lindsey v. Washington</u>, 301 U.S. 397, 400-02 (1937) (changing penalty from 15-year maximum imprisonment to mandatory 15-year imprisonment violated ex post facto clause); <u>Weaver v. Graham</u>, 450 U.S. 24, 32 n.17 (1981) ("a law may be retrospective not only if it alters the length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory").

¶58  Thus, to me, the question becomes whether the more burdensome mandatory DNA surcharge is <u>punishment</u> for ex post facto purposes.

¶59  <u>Radaj</u> already recognizes that a mandatory surcharge can constitute punishment for ex post facto purposes.

¶60  Although not considered in <u>Radaj</u>, the mandatory surcharge looks like punishment because the statute explicitly makes it part of a defendant's sentence.  Other statutorily imposed surcharges, fees, and costs are not explicitly part of the sentence.[2]

---

[2] Wisconsin Stat. § 973.046(1r) provides:

(1r) If a court imposes a sentence or places a person on probation, the court shall impose a deoxyribonucleic acid analysis surcharge, calculated as follows:

(continued)

2

¶61 Because the DNA surcharge is part of the sentence and because the sentence is the means by which circuit courts impose punishment, the DNA surcharge has been considered part of punishment.[3] See State v. Nickel, 2010 WI App 161, 330 Wis. 2d 750, 794 N.W.2d 765.

¶62 In Nickel, the defendant moved to vacate the DNA surcharge imposed under the permissive DNA surcharge law. The court of appeals explained that when "a defendant moves to vacate a DNA surcharge, the defendant seeks sentence modification." Nickel, 330 Wis. 2d 750, ¶5. The court of appeals rejected "the notion that the DNA surcharge is neither a sentence nor a component of a sentence. Nickel, 330 Wis. 2d 750, ¶6.[4]

¶63 Scruggs' judgment of conviction and sentence explicitly states that she must submit a DNA sample and pay a

---

(a) For each conviction for a felony, $250.

(b) For each conviction for a misdemeanor, $200.

[3] See State v. Edwards, 2013 WI App 51, ¶7 n.2, 347 Wis. 2d 526, 830 N.W.2d 109 (quoting State v. Gibbons, 71 Wis. 2d 94, 97, 237 N.W.2d 33 (1976) ("[A] sentence is the means by which the court imposes a punishment or penalty provided by statute for the offense upon the person found guilty, as distinguished from probation, under which sentence is either withheld or its execution stayed.").

[4] At least two circuit courts have vacated the mandatory DNA surcharge imposed on defendants who committed crimes before the effective date of the statutory mandatory DNA surcharge. See State v. Tharp, Milwaukee County Case Nos. 13-CF-2871 & 13-CF-5173 (Cir. Ct. Oct. 9, 2014); State v. Vivar, Jefferson County Case No. 13-CT-367 (Cir. Ct. Sept. 9, 2014).

$250 surcharge.[5] Following the reasoning of Nickel, the DNA surcharge (statutorily mandated as part of Scruggs' sentence) constitutes punishment for purposes of the ex post facto clause.

¶64 I could end here and conclude that the mandatory DNA surcharge statute is punishment and its retroactive application runs afoul of the prohibition against ex post facto laws in the federal and state constitutions.[6]

¶65 Nevertheless, I continue my ex post facto analysis, focusing on whether the mandatory DNA surcharge statute has a punitive effect.[7]

---

[5] The majority opinion suggests that a cross-reference to the DNA surcharge in Wis. Stat. § 814.76(5), which lists various surcharges in criminal actions, negates any inferences that could be drawn from the placement of the DNA surcharge in the criminal statutes. I disagree. In any event § 814.76(5) does not negate the fact that the DNA surcharge is, unlike other surcharges, part of the sentence.

[6] See Article I, Section 10 of the United States Constitution and Article I, Section 12 of the Wisconsin Constitution, prohibiting ex post facto laws.

"The animating principle underlying the ex post facto clauses is the concept of fair warning." State ex rel Singh v. Kemper, 2016 WI 67, ¶39, 371 Wis. 2d 127, 883 N.W.2d 86. See also Breck P. McAllister, Ex Post Facto Laws in the Supreme Court of the United States, 15 Cal. L. Rev. 269, 287 (1927) ("At the root of the mischief of ex post facto laws is their unfairness. The individual is entitled to a chance to know what the law is before he acts. The law must be accessible. It must not, like Caligula's, be written in small characters and hung upon high pillars.").

[7] I conclude that a punitive legislative intent can be shown, but it is easier to demonstrate that the mandatory DNA surcharge statute's effect is more burdensome punishment than the discretionary statute. Similar arguments support both punitive intent and punitive effect.

(continued)

4

¶66 In an ex post facto analysis, the text of the challenged statute must be scrutinized. The proper approach is to determine whether the mandatory DNA surcharge statute is an unconstitutional ex post facto violation on its face.[8]

¶67 The text of the statutory mandatory DNA surcharge demonstrates that the DNA surcharge is punitive in effect and not merely a reasonable civil charge to fund the estimated costs of state DNA programs:

---

Compare People v. Stead, 845 P.2d 1156, 1160 (Colo. 1993) (resting its conclusion that a drug offender surcharge had a punitive intent in part on the ground that "[t]he surcharge at issue is part of Colorado's criminal code" and in part on "[t]he amount of the fine imposed is correlated to the degree of felony committed.") with In re DNA Ex Post Facto Issues, 561 F.3d 294, 299-300 (4th Cir. 2009) (resting its conclusion that a $250 DNA surcharge applied per defendant did not have a punitive intent because the surcharge's express purpose was "not punitive," it was not codified in statutory chapter addressing "crime and punishment," it offset DNA expenses, and it was "relatively small [in] size.").

[8] See, e.g., Hudson v. United States, 522 U.S. 93, 100-01 (1997) (the seven Mendoza-Martinez factors "must be considered in relation to the statute on its face."); Weaver v. Graham, 450 U.S. 24, 29, 34 (1981) ("the inquiry [whether the criminal statute ameliorates or worsens conditions imposed by its predecessor] looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual"); Lindsey v. Washington, 301 U.S. 397, 401 (1937) ("[T]he ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. . . . It is for this reason that an increase in the possible penalty is ex post facto regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.") (citations omitted).

See also 6 Wayne R. LaFave et al., Criminal Procedure § 25.1(c) at 765-66 (4th ed. 2015).

5

- The DNA surcharge is imposed and collected as part of the sentence in every criminal conviction, regardless of whether a DNA sample is collected or analyzed.

- The DNA surcharge is imposed and collected as part of the sentence in every criminal conviction on the basis of the number of convictions, regardless of whether a DNA sample is collected or analyzed.[9]

- The DNA surcharge is imposed and collected as part of the sentence in every criminal conviction, regardless of whether the defendant has previously furnished a DNA sample.

¶68 The most significant factor in a court's determination that a statute's effects are not punitive is that the statute

---

[9] Two legislative decisions suggest a punitive intent: (1) tying the amount of the surcharge to the number of convictions (regardless of whether the defendant supplied only one DNA sample or several and regardless of whether the State analyzed one DNA sample or numerous samples); and (2) imposing a lesser DNA surcharge for misdemeanors than felonies. Cf. State v. Radaj, 2015 WI App 50, ¶21, 363 Wis. 2d 633, 866 N.W.2d 758 ("Wisconsin's DNA surcharge increases with each conviction . . . . [T]he legislative decision to tie the amount of the surcharge to the number of convictions, something seemingly unrelated to the cost of the DNA-analysis-related activities that the surcharge funds, casts doubt on legislative intent."); State v. Elward, 2015 WI App 51, ¶7, 363 Wis. 2d 628, 866 N.W.2d 756 ("When the circuit court sentenced Elward, the law required the surcharge, but did not permit the State to actually collect a DNA sample. As a result, the $200 surcharge bore no relation to the cost of a DNA test because he never had to submit to a test. The State received money for nothing. . . . [T]he surcharge . . . violated the Constitution's ex post facto clause.") (citation omitted).

has a rational connection to a non-punitive purpose.[10] I shall therefore examine whether a rational connection exists between the terms of the statutory mandatory DNA surcharge and the non-punitive purpose of the statute to fund state DNA programs. See majority op., ¶¶45-48.

¶69 Although the State and the majority opinion assert that a rational connection exists, their analyses fail. This analysis involves the factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963), especially the sixth and seventh factors that "must be considered in relation to the statute on its face." Hudson v. United States, 522 U.S. 93, 100-01 (1997).[11]

¶70 The sixth Mendoza-Martinez factor addresses whether the surcharge is rationally connected to some non-punitive purpose. The seventh Mendoza-Martinez factor addresses whether the surcharge "appears excessive in relation to the non-punitive purpose" of the statute. See majority op., ¶¶44-45.

¶71 The sixth and seventh Mendoza-Martinez factors, taken together, require courts to ask a two-part question: Is there a rational connection between the surcharge and the non-punitive purpose, and is the amount of the surcharge excessive in

---

[10] "The Act's rational connection to a nonpunitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive." Smith v. Doe, 538 U.S. 84, 102 (2003) (quoting United States v. Ursery, 518 U.S. 267, 290 (1996)).

[11] See also Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963) ("[T]hese factors must be considered in relation to the statute on its face.").

7

relation to the non-punitive activities the surcharge funds?[12] "If there is no rational connection and the fee is excessive in relation to the activities it is intended to fund, then the fee in effect serves as an additional criminal fine, that is, the fee is punitive." Radaj, 363 Wis. 2d 633, ¶25.

¶72 Looking to the sixth and seventh Mendoza-Martinez factors, it is evident that no rational and proportional connection exists between the mandatory, per-conviction DNA surcharge and its professed non-punitive purpose to fund the State's DNA program.

¶73 Radaj illustrates that there is no rational connection between the per-conviction, mandatory DNA surcharge and the funding of the State's DNA program. Radaj was convicted of four felonies committed prior to the effective date of the statutory mandatory DNA surcharge. Rather than use its discretion to impose a DNA surcharge if necessary, the circuit court was required by statute to order Radaj to pay the $250 surcharge for each felony, totaling $1,000. It could have been worse——Radaj was initially charged with 21 misdemeanors in addition to the four felonies; if Radaj had been convicted and sentenced for all 25 crimes, Radaj would have been ordered to pay $4,200 as a DNA surcharge.

---

[12] Specifically, we must consider "whether, under Wisconsin's statutory scheme, there is some rational connection between calculating the DNA surcharge on a per-conviction basis and the cost of the DNA-analysis-related activities that the surcharge is meant to cover." Radaj, 363 Wis. 2d 633, ¶29.

¶74 The court of appeals upheld Radaj's ex post facto challenge to the statute and the accompanying surcharges. Characterizing the multiple surcharges as punishment, the court of appeals concluded that the sentence imposed was more burdensome on Radaj than the punishment that would have been imposed when Radaj committed the crimes (a single, permissive surcharge).

¶75 After the majority's decision in the instant case, Radaj, who was convicted of multiple crimes may not have to pay any DNA surcharge at all. Yet Scruggs, who was convicted of one crime, must pay a $250 DNA surcharge.

¶76 Is there any reason to treat Radaj and Scruggs differently? Both committed crimes before the effective date of the statutory mandatory DNA surcharge. Radaj committed more crimes than Scruggs, yet his punishment (the DNA surcharge) may be less than hers. Does their different treatment run afoul of due process and equal protection, as well as ex post facto protections of the law?

¶77 I conclude that, on its face, the mandatory DNA surcharge statute does not bear a rational connection to funding the State's DNA program. The law calculates the DNA surcharge regardless of whether DNA was collected or analyzed, and calculates it on a per-conviction and felony/misdemeanor basis regardless of whether DNA was collected or analyzed. Accordingly, the DNA surcharge bears no relationship to the actual cost of the DNA-analysis-related activities that the surcharge is apparently intended to cover.

¶78 However rational a connection may be drawn between a statute imposing a single mandatory $250 DNA surcharge for a DNA sample actually collected and analyzed and funding the State's DNA programs, such a statute is not the statute challenged in this court on ex post facto grounds.

¶79 The DNA surcharge challenged in the instant case is imposed regardless of whether a DNA sample of the defendant is collected or analyzed; is calculated differently for misdemeanors and felonies (yet the cost of analysis of DNA samples in both types of crimes is the same); and is based on the number of convictions in a case. Consequently, the surcharge imposed by the statute challenged is not connected to——and is excessive in relation to——the regulatory purpose of funding state DNA programs.

¶80 As in Radaj, the remedy for the ex post facto violation in the instant case is to vacate the surcharge, and to remand the cause to the circuit court to consider whether to impose a discretionary surcharge under the statute applicable at the time the crime was committed.

¶81 Before I conclude, I briefly discuss the obvious: The effect of the mandatory DNA surcharge statute should be evaluated in the context of a criminal justice system that exacts a serious toll on criminal defendants. Collateral consequences already burden many aspects of a defendant's daily life, such as limiting employment and housing options. Persons sentenced for a misdemeanor or felony in Wisconsin face up to

10

238 collateral consequences.[13]  And, on top of this, criminal justice debt is stacking up for many defendants at a staggering rate.  Collateral consequences and criminal justice debt appear to be leading criminal offenders into a downward spiral of debt and recidivism.[14]

¶82  I thus urge the legislature and the Wisconsin Judicial Council to take notice of and consider the unintended consequences of the increasing statutory imposition of debt on criminal defendants and the increasing statutory collateral consequences.  See Wis. Stat. § 13.92(2)(j).

¶83  For the reasons set forth, I dissent.

---

[13] See ABA Criminal Justice Section, National Inventory of the Collateral Consequences of Conviction, https://niccc.csgjusticecenter.org/search/?jurisdiction=50 (last visited Feb. 9, 2017).

[14] See Alicia Bannon, Mitali Nagrecha, & Rebekah Diller, Brennan Center for Justice at New York University School of Law, Criminal Justice Debt: A Barrier to Reentry (2010), http://www.brennancenter.org/sites/default/files/legacy/Fees%20a nd%20Fines%20FINAL.pdf.

This report discusses the hardships on criminal defendants imposed by "'user fees,' financial obligations imposed not for any traditional justice purpose . . . but rather to fund tight state budgets."  Id. at 1.  User fees, "while often small in isolation," are so numerous in many jurisdictions (and becoming more numerous) that criminal defendants end up with extensive debt.  This criminal justice debt tosses offenders into "an endless cycle of debt."  Id.  This debt creates a "significant barrier for individuals seeking to rebuild their lives after a criminal conviction."  Id. at 2.  The report addresses the concern that criminal justice debt leads to recidivism.  Id. at 5.