# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP616-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| |       Plaintiff-Respondent, |
| |    v. |
| | Anthony M. Schmidt, |
| |       Defendant-Appellant. |

ON PETITION TO BYPASS

| | |
|---|---|
| OPINION FILED: | June 18, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 8, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Walworth |
|   JUDGE: | Phillip A. Koss |

JUSTICES:

ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, and KAROFSKY, JJ., joined, and in which ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined with respect to Parts I, II, and III.A. ROGGENSACK, J., filed a concurrence, in which REBECCA GRASSL BRADLEY, J., joined. HAGEDORN, J., filed an opinion concurring in part, and dissenting in part, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant, there were briefs filed by *Christopher P. August,* assistant state public defender and *Office of the State Public Defender*, Milwaukee. There was an oral argument by *Christopher P. August.*

For the plaintiff-respondent, there was a brief filed by *Eric M. Muellenbach*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Eric M. Muellenbach.*

No. 2020AP616-CR
(L.C. No. 2018CF636)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent,

  v.

Anthony M. Schmidt,

      Defendant-Appellant.

**FILED**

**JUN 18, 2021**

Sheila T. Reiff
Clerk of Supreme Court

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, and KAROFSKY, JJ., joined, and in which ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined with respect to Parts I, II, and III.A. ROGGENSACK, J., filed a concurrence, in which REBECCA GRASSL BRADLEY, J., joined. HAGEDORN, J., filed an opinion concurring in part, and dissenting in part, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

APPEAL from a judgment and an order of the Circuit Court for Walworth County, Phillip A. Koss, Judge. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, C.J. This case is before the court on bypass pursuant to Wis. Stat. § (Rule) 809.60 (2019-20).[1] Anthony Schmidt brought this action challenging the Walworth

---

[1] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

County circuit court's[2] judgment imposing a child pornography surcharge for 14 images of child pornography, pursuant to Wis. Stat. § 973.042(2), and order denying Schmidt's postconviction motion seeking to withdraw his guilty plea or, in the alternative, have the circuit court vacate the child pornography surcharges for the eight images of child pornography that formed the basis of Schmidt's read-in charges of possession of child pornography.

¶2 Schmidt was charged with 14 counts of possession of child pornography and one count of failing to register for the sex offender registry. As part of a plea agreement, Schmidt pled guilty to six counts of possession of child pornography, and the State dismissed and read in the remaining charges. The circuit court accepted this plea agreement and convicted Schmidt of the six counts of possession of child pornography. At sentencing, the circuit court sentenced Schmidt to 30 years, consisting of 15 years of initial confinement and 15 years of extended supervision. The circuit court also imposed a $500 child pornography surcharge, pursuant to Wis. Stat. § 973.042(2), for each of the 14 images of child pornography for which Schmidt was charged.

¶3 After sentencing, Schmidt filed a postconviction motion seeking to have the circuit court (1) allow him to withdraw his guilty plea, (2) vacate the child pornography surcharges imposed for the eight images of child pornography that formed the basis of Schmidt's read-in charges of possession of child pornography, and (3) grant a hearing on both issues. Schmidt argued that he should

---

[2] The Honorable Phillip A. Koss presided.

2

be permitted to withdraw his plea because the circuit court failed to adequately inform him during the plea colloquy about the child pornography surcharge, which he alleged was a punishment attaching to his conviction. In the alternative, he argued that the circuit court could not impose a child pornography surcharge for images of child pornography that form the basis of read-in charges of possession of child pornography. The circuit court denied Schmidt's postconviction motion without a hearing, determining that it did not need to inform Schmidt of the child pornography surcharge during the plea colloquy, and that it could order the child pornography surcharge for the images of child pornography that formed the basis of read-in charges of possession of child pornography. We agree.

¶4 We conclude that the child pornography surcharge is not punitive, so the circuit court did not need to inform Schmidt of the child pornography surcharge during the plea colloquy. Consequently, the circuit court did not err when it denied Schmidt's postconviction motion to withdraw his guilty plea. We also conclude that the child pornography surcharge applies to images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography, so long as those images of child pornography are connected to and brought into relation with the convicted individual's offense of sexual exploitation of a child or possession of child pornography. Accordingly, we affirm the circuit court's judgment imposing the child pornography surcharge

for 14 images of child pornography, and the order that denied plea withdrawal.

### I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶5   On December 13, 2018, the State filed a criminal complaint against Schmidt, alleging five counts——specifically, four counts of possession of child pornography and one count of failing to comply with requirements of the sex offender registry.[3] The State later filed an information increasing the number of counts against Schmidt to 14 counts of possession of child pornography and retaining the one count of failing to comply with requirements of the sex offender registry.

¶6   On April 1, 2019, the circuit court held a plea hearing after the State and Schmidt reached a plea agreement.  The plea agreement, which was filed with the circuit court, stated that "Schmidt will plead guilty to counts 1-6 [each a count of possession of child pornography], the State will move to dismiss and read-in the remaining charges, a [presentence investigation] will be requested by the parties, and both sides will be free to argue for the appropriate sentence."  Schmidt also submitted a completed Plea Questionnaire/Waiver of Rights form.  Included in the Plea Questionnaire/Waiver of Rights form, Schmidt acknowledged that he faced "a $500.00 surcharge for each image or each copy of

---

[3] Schmidt was previously convicted of possession of child pornography and, as a part of that conviction, was required to register as a sex offender.

4

an image [of child pornography]" upon the circuit court accepting his guilty plea.

¶7 The circuit court engaged in a standard plea colloquy with Schmidt before accepting his guilty plea. At no time did the court inform Schmidt that he faced a surcharge for each image of child pornography associated with his crimes. The court accepted Schmidt's guilty plea, entered its judgment of conviction, and ordered a presentence investigation.

¶8 On May 28, 2019, the circuit court held a sentencing hearing. The court sentenced Schmidt to 30 years, consisting of 15 years of initial confinement and 15 years of extended supervision. The circuit court also imposed a surcharge for 14 images of child pornography; specifically, the six images of child pornography that formed the basis of the six convictions and the eight images of child pornography that formed the basis of Schmidt's read-in charges of possession of child pornography.

¶9 On December 18, 2019, Schmidt filed a motion to withdraw his guilty plea or, in the alternative, to have the circuit court vacate the child pornography surcharges imposed for the eight images of child pornography that formed the basis of his read-in counts of possession of child pornography. He asserted that the child pornography surcharge is a punishment that the circuit court was required to inform him of during the plea colloquy. Because the circuit court did not do so, Schmidt claims that his plea was not knowing, intelligent, and voluntary, and that therefore he was entitled to withdraw his plea. He also contended, in the alternative to plea withdrawal, that the circuit court could not

impose the child pornography surcharge for the images of child pornography that formed the basis of his read-in counts of possession of child pornography because the court imposed a sentence for only six counts, not 14 counts, of possession of child pornography.  Accordingly, Schmidt argued, the circuit court should vacate the child pornography surcharge for the eight images of child pornography that formed the basis of his read-in charges of possession of child pornography.

¶10  On March 31, 2020, the circuit court issued its order denying Schmidt's postconviction motion without a hearing. Specifically, the court determined that the child pornography surcharge was not punishment, so it did not need to inform Schmidt of the surcharge prior to accepting his guilty plea.  The court also determined that it had the power to impose the child pornography surcharge for the eight images of child pornography that formed the basis of the eight read-in charges of possession of child pornography and correctly exercised its authority when it did so.

¶11  Schmidt appealed.  On October 16, 2020, while the case was still pending before the court of appeals, Schmidt petitioned this court to bypass the court of appeals, pursuant to Wis. Stat. § (Rule) 809.60.  We granted Schmidt's petition to bypass the court of appeals and took jurisdiction of this case.

## II.   STANDARD OF REVIEW

¶12  Schmidt asks this court to review the circuit court's denial of his postconviction motion to withdraw his guilty plea

6

after he was sentenced.  "We review a circuit court's decision to deny a plea withdrawal motion under an erroneous exercise of discretion standard."  State v. Savage, 2020 WI 93, ¶24, 395 Wis. 2d 1, 951 N.W.2d 838 (citing State v. Nash, 2020 WI 85, ¶27, 394 Wis. 2d 238, 951 N.W.2d 404).  "A defendant seeking to withdraw a plea after sentencing must show by clear and convincing evidence that 'allowing the withdrawal of the plea is necessary to correct a manifest injustice.'"  Id. (quoting Nash, 394 Wis. 2d 238, ¶32).  "A defendant can meet that burden by showing that he or she did not knowingly, intelligently, and voluntarily enter the plea."  State v. Fugere, 2019 WI 33, ¶16, 386 Wis. 2d 76, 924 N.W.2d 469.

¶13  "Whether a guilty plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact."  Id., ¶17 (citing State v. Muldrow, 2018 WI 52, ¶24, 381 Wis. 2d 492, 912 N.W.2d 74).  "This court upholds a circuit court's findings of fact unless clearly erroneous, and '[d]etermines independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary.'"  Id. (alteration in original) (quoting State v. Brown, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906).

¶14  Schmidt also asserts that there were deficiencies in the plea colloquy conducted by the circuit court.  "This court determines the sufficiency of the plea colloquy and the necessity of an evidentiary hearing, questions of law, independently of the circuit court and court of appeals but benefiting from their analyses."  State v. Hoppe, 2009 WI 41, ¶17, 317 Wis. 2d 161, 765 N.W.2d 794.

7

¶15 Furthermore, Schmidt argues that the child pornography surcharge is punishment, and that the child pornography surcharge cannot apply to images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography. Both of these arguments require us to interpret Wis. Stat. § 973.042, which we do de novo. Muldrow, 381 Wis. 2d 492, ¶25.

### III. ANALYSIS

¶16 We begin our analysis with Schmidt's claim that he is entitled to withdraw his guilty plea. We then turn to his alternative argument that we should vacate the circuit court's imposition of the child pornography surcharge for the images of child pornography that formed the basis of his read-in charges of possession of child pornography.

A. Schmidt Is Not Entitled To Withdraw His Guilty Plea.

1. Principles of plea withdrawal, plea colloquies, and punishment

¶17 To withdraw a plea after sentencing, as is the case here, the defendant "bears the heavy burden to demonstrate by 'clear and convincing evidence' that withdrawal is necessary to avoid 'manifest injustice.'" Fugere, 386 Wis. 2d 76, ¶24 (quoted source omitted). "A plea is 'manifestly unjust' in violation of the Due Process Clause of the United States Constitution if it was not entered 'knowingly, intelligently, and voluntarily.'" Id. (quoting Bradshaw v. Stumpf, 545 U.S. 175, 182-83 (2005)). "A plea not entered knowingly, intelligently, and voluntarily

8

violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right." State v. Taylor, 2013 WI 34, ¶25, 347 Wis. 2d 30, 829 N.W.2d 482.

¶18 For a defendant's plea to be knowing, intelligent, and voluntary, "the circuit court must notify the defendant of any direct consequence of his guilty plea." Muldrow, 381 Wis. 2d 492, ¶1. "A direct consequence of a guilty plea, is one that 'has a definite, immediate, and largely automatic effect on the range of a defendant's punishment.'" Id. (quoting State v. Bollig, 2000 WI 6, ¶16, 232 Wis. 2d 561, 605 N.W.2d 199). While a circuit court must inform a defendant of a direct consequence of a guilty plea, the circuit court does not need to inform a defendant of "collateral consequences" of a defendant's plea for the plea to be knowing, intelligent, and voluntary. Fugere, 386 Wis. 2d 76, ¶20. "Collateral consequences are indirect and do not flow from the conviction." Id. (quoting State v. Byrge, 2000 WI 101, ¶61, 237 Wis. 2d 197, 614 N.W.2d 477). "In evaluating whether a consequence of a defendant's plea is direct or collateral, courts look to whether the consequence is a punishment." Id.

¶19 "The legislature has codified this prerequisite, requiring circuit courts to '[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted' before the court accepts a guilty plea." Muldrow, 381 Wis. 2d 492, ¶2 (alteration in original) (quoting Wis. Stat. § 971.08(1)(a)). "A defendant who is not accurately informed of

9

the punishment that could result from his guilty plea may be entitled to withdraw his plea." Id.

¶20 When a defendant has shown that he or she was not accurately informed of a punishment, the circuit court does not automatically grant the defendant's plea withdrawal request. See Fugere, 386 Wis. 2d 76, ¶24. Instead, the circuit court may hold an evidentiary hearing where the State may prove that, despite the failure to inform him of the punishment, the defendant's plea was indeed knowing, intelligent, and voluntary. Id.

2. The child pornography surcharge is not punishment.

¶21 With these principles in mind, we turn to Schmidt's challenge in this case. Schmidt alleges that he is entitled to plea withdrawal, or an evidentiary hearing, because the child pornography surcharge is punishment that he was not informed of during his plea colloquy.

¶22 Despite the clear mandate that the circuit court must inform the defendant of all punishments, it is not always clear whether a particular sanction constitutes punishment. See, e.g., Muldrow, 381 Wis. 2d 492 (determining whether lifetime GPS tracking constitutes punishment); Bollig, 232 Wis. 2d 561 (determining whether a sex offender registration requirement constitutes punishment); State v. Williams, 2018 WI 59, 381 Wis. 2d 661, 912 N.W.2d 373 (determining whether a DNA surcharge constitutes punishment). To determine whether a sanction is punishment, we adopted the "intent-effects test" from Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-70 (1963). Muldrow, 381 Wis. 2d 492, ¶30.

10

¶23 This intent-effects test consists of two independent inquiries to determine whether the sanction is punishment. The first inquiry requires courts to "look to the 'statute's primary function' to determine the statute's intent," as expressed in the plain text of the statute. Fugere, 386 Wis. 2d 76, ¶38 (quoting Mendoza-Martinez, 372 U.S. at 169); State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. If the statute's primary function is to impose punishment, we end the inquiry, and the sanction is deemed punishment. Smith v. Doe, 538 U.S. 84, 92 (2003). If the statute's primary function is not punitive, we then turn to the second inquiry, which requires the court to consider "whether the effect of the statute was 'penal or regulatory in character.'" Muldrow, 381 Wis. 2d 492, ¶31 (quoting Mendoza-Martinez, 372 U.S. at 168). If the effect of the statute was penal in character, the sanction is deemed punishment. Thus, if either the statute's primary function is punitive or the sanction is in effect punitive in character, we must deem the sanction to be punishment.

¶24 Accordingly, we must determine whether the statute's primary function is punitive or the effect of the child pornography surcharge is punishment. Such an inquiry is "a matter of statutory construction." See Hudson v. United States, 522 U.S. 93, 99 (1997). The child pornography surcharge is codified in Wis. Stat. § 973.042(2), which provides:

> If a court imposes a sentence or places a person on probation for a crime under [Wis. Stat. §§] 948.05[4] or 948.12[5] and the person was at least 18 years of age when the crime was committed, the court shall impose a child pornography surcharge of $500 for each image or each copy of an image associated with the crime. The court shall determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury.[6]

¶25 Having set forth the specific statute at issue, we now turn to an analysis of the intent-effects test to determine whether the child pornography surcharge is punishment.

     a. Intent of the child pornography surcharge

¶26 The first half of the intent-effects test requires us to determine whether the primary function of the child pornography surcharge statute, Wis. Stat. § 973.042(2), is punitive. See Williams, 381 Wis. 2d 661, ¶22. Both parties agree that the primary function of the child pornography surcharge is not punitive. We agree. See State v. Scruggs, 2017 WI 15, 373 Wis. 2d 312, 891 N.W.2d 786 (holding that the primary function of the DNA surcharge statute was not punitive); Williams, 381 Wis. 2d 661 (same).

---

[4] Wisconsin Stat. § 948.05 criminalizes sexual exploitation of a child, including the recording and displaying of children engaging in sexually explicit conduct and the sale, distribution, and promotion of recordings of children engaging in sexually explicit conduct.

[5] Wisconsin Stat. § 948.12 criminalizes possession of child pornography.

[6] "In this section, 'image' includes a video recording, a visual representation, a positive or negative image on exposed film, and data representing a visual image." Wis. Stat. § 973.042(1).

12

¶27 In Scruggs, we determined that the primary function of the DNA surcharge statute was not punitive. Scruggs, 373 Wis. 2d 312, ¶3. We reached this conclusion based on the plain text of the statute because "[t]he legislature termed the payment a 'surcharge' not a 'fine,' . . . and it linked the surcharge to legislation that dramatically increased the number of people required to provide DNA samples to be analyzed, stored, and maintained in the DNA databank." Williams, 381 Wis. 2d 661, ¶22 (summarizing the Scruggs court's analysis).

¶28 The child pornography surcharge shares both of these characteristics. Just as with the DNA surcharge, the legislature termed the payment a surcharge rather than a fine. See Wis. Stat. § 973.042(2), (5), (6). Moreover, the surcharge is linked to funding of investigations of sexual exploitation of children and possession of child pornography and grants to eligible public agencies or nonprofit organizations that provide counseling services to victims of sexual assault. Wis. Stat. § 20.455(5)(gj).[7] Therefore, in light of the plain text of § 973.042, the primary function of the child pornography surcharge is not punitive.

---

[7] Wisconsin Stat. § 20.455(5)(gj) provides that "[a]ll moneys received from any child pornography surcharge imposed under [§] 973.042 for investigating offenses under [§] 948.05 or 948.12 and for making grants under [§] 165.93(2)(a)."

Wisconsin Stat. § 165.93(2)(a) in turn provides that "[t]he [Department of Justice] shall provide grants to eligible organizations from the appropriations under [§] 20.455(5)(e) and (gj) to provide services for sexual assault victims."

b.  Effect of the child pornography surcharge

¶29  The second inquiry of the intent-effects test requires us to independently consider the effect of the child pornography surcharge.  See Williams, 381 Wis. 2d 661, ¶30.  Regardless of the statute's non-punitive primary function for imposing the child pornography surcharge, we must consider whether the child pornography surcharge is "so punitive in form and effect as to render [it] criminal despite" the statute's primary function to the contrary.  Scruggs, 373 Wis. 2d 312, ¶39 (quoting State v. Rachel, 2002 WI 81, ¶42, 254 Wis. 2d 215, 647 N.W.2d 762).  "Only the 'clearest proof' will 'override [the statute's primary function] and transform what has been denominated a civil remedy into a criminal penalty.'"  Williams, 381 Wis. 2d 661, ¶30 (quoting Hudson, 522 U.S. at 100).

¶30  Seven factors, referred to as the Mendoza-Martinez factors, guide our analysis of whether a sanction is punitive in effect.  These factors are:

> (1) does the statute involve an affirmative disability or restraint; (2) has the sanction at issue historically been regarded as punishment; (3) will the sanction be imposed only after a finding of scienter; (4) does the statute promote the traditional aims of punishment— retribution and deterrence; (5) is the behavior to which it applies already a crime; (6) is there an alternative purpose to which it may be rationally connected; and (7) is the sanction excessive in relation to the alternative purpose assigned.

Williams, 381 Wis. 2d 661, ¶30 (citing Mendoza-Martinez, 372 U.S. at 168-69).  The Mendoza-Martinez factors "are 'neither exhaustive nor dispositive' but are 'useful guideposts'" in

14

ascertaining if the effect of a statute is punitive. Smith, 538 U.S. at 97 (citations omitted). And these factors must be applied on the face of the statute, rather than to the facts and circumstances of an individual defendant. Hudson, 522 U.S. at 100; contra Williams, 381 Wis. 2d 661, ¶67 (Abrahamson, J., concurring) (advocating to answer these questions "on a case-by-case basis").

¶31 Accordingly, when we apply the seven Mendoza-Martinez factors here, we look to the statutory language that imposes the $500 surcharge rather than a potential cumulative effect for a particular defendant. See Mendoza-Martinez, 372 U.S. at 169. We conclude, based on our application of the Mendoza-Martinez factors, that the child pornography surcharge is not punitive in effect.

i. Is the surcharge an affirmative disability or restraint?

¶32 Schmidt asserts that the child pornography surcharge imposes an affirmative disability or restraint due to the "extreme level of financial immiseration entailed by the statute." Schmidt argues that the child pornography surcharge statute imposes a disability on defendants because it "is capable of imposing millions of dollars of financial liability," which "harshly limit[s] the defendant's ability to reintegrate into society upon release" and "creates a debt that can never be repaid and . . . will in fact impact employment, housing, and travel." However, as we discussed above, when analyzing the child pornography surcharge statute under the Mendoza-Martinez factors,

15

we must look at the statutory language, which imposes a $500 surcharge per image of child pornography. As such, Schmidt's hypothetical argument that an individual defendant may face millions of dollars of surcharges is irrelevant to our analysis.

¶33 Furthermore, the child pornography surcharge statute does not impose an affirmative disability or restraint. "'[D]isability' and 'restraint' are normally understood to mean imprisonment." Williams, 381 Wis. 2d 661, ¶32. The child pornography surcharge "imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." Smith, 538 U.S. at 100. Moreover, a $500 surcharge is "less harsh than the sanctions of occupational debarment, which [the Court has] held to be nonpunitive." Id. Such a surcharge "does not restrain activities [defendants] may pursue but leaves them free to change jobs or residences." Id.

¶34 As such, this factor weighs against characterizing the child pornography surcharge as punishment.

ii. Is the surcharge historically viewed as punishment?

¶35 "[A] surcharge has not been viewed as punishment." Williams, 381 Wis. 2d 661, ¶33. We have been unable to identify "historical evidence supporting [the] characterization of a surcharge as punishment. Although the surcharge might not align exactly with the remedial sanction cases from the late 1800s and early 1900s[,] a surcharge resembles a non-punitive remedial sanction much more than punishment." Id., ¶34. Schmidt requests

16

that we depart from this conclusion because of his assertion that the child pornography surcharge statute authorizes the imposition of millions of dollars of financial penalties "in conjunction with proof that the offender has committed a morally blameworthy act." However, contrary to Schmidt's assertion, the plain language of the child pornography surcharge statute imposes a $500 surcharge as the sanction. Accordingly, Schmidt has presented no new information that suggests that we should depart from our previous determination that "a surcharge has not been viewed as punishment." Id., ¶33. As such, this factor undercuts characterizing the child pornography surcharge as punishment.

### iii. Is a finding of scienter required?

¶36 Schmidt concedes that no finding of scienter is required to impose the surcharge. The absence of the scienter requirements shows that the statute is not punitive in effect. Id., ¶35 (quoting Kansas v. Hendricks, 521 U.S. 346, 362 (1997)). As such, this factor militates against characterizing the child pornography surcharge as punishment.

### iv. Does a surcharge promote retribution and deterrence?

¶37 The child pornography surcharge does not promote the traditional aims of punishment——retribution and deterrence. The child pornography surcharge statute imposes a $500 surcharge, which is "relatively small and therefore [does] not promote the traditional punitive aims of retribution and deterrence." Id., ¶36 (citing Scruggs, 373 Wis. 2d 312, ¶45). The $500 surcharge "is unlikely to deter anyone from engaging in illegal activity.

17

And the corrective impact of a [$500 surcharge] pales in comparison to the penal power of a lengthy prison sentence." Id. The maximum sentence for possession of child pornography is 25 years in prison and $100,000 fine, which is far more retributive and deterring than the $500 surcharge. As such, this factor undermines characterizing the child pornography surcharge as punishment.

### v. Does the surcharge apply to conduct already a crime?

¶38 Both the State and Schmidt agree that the surcharge applies to conduct that was already a crime: convictions for sexual exploitation of a child and possession of child pornography. This suggests that "the surcharge has the effect of punishing criminal behavior." Scruggs, 373 Wis. 2d 312, ¶43. Accordingly, this factor weighs in favor of characterizing the surcharge as punishment. However, the factors are only guideposts and no one factor is dispositive. Smith, 538 U.S. at 97.

### vi. Is the surcharge rationally connected to an alternative purpose?

¶39 "The existence of an alternative non-punitive purpose for a sanction is considered 'the most significant factor' in determining whether the effect of a sanction is punitive." Muldrow, 381 Wis. 2d 492, ¶57. Both the State and Schmidt agree that the child pornography surcharge serves two alternative non-punitive purposes: (1) funding investigations of sexual exploitation of children and possession of child pornography, and (2) providing grants to eligible public agencies or nonprofit organizations that provide counseling services to victims of sexual assault. Wis. Stat. § 20.455(5)(gj). While Schmidt agrees

18

that the child pornography surcharge has these alternative purposes, he contends that assessing the child pornography surcharge based on the number of images of child pornography is not rationally related to the alternative purposes because "it makes little sense that the costs of a child pornography investigation will increase at a rate of $500 per individual [image]."

¶40 Even if Schmidt's assertion were correct——for which he provides no support or citation——"[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." Smith, 538 U.S. at 103. Schmidt's alleged imprecision "does not suggest that the [child pornography surcharge's] nonpunitive purpose is a 'sham or mere pretext.'" Id. (quoting Hendricks, 521 U.S. at 371 (Kennedy, J., concurring)). "[I]t is altogether rational to assess a fee aimed at solving crimes against those who commit them . . . ." Williams, 381 Wis. 2d 661, ¶38 (quoted source omitted). Because the child pornography surcharge is used to fund investigations of sexual exploitation of children and possession of child pornography, the child pornography surcharge is rationally related to its alternative purpose of defraying investigation costs.

¶41 Moreover, Schmidt's assertion ignores the other purpose for which the $500 is earmarked——providing grants for counseling services to victims of sexual assault. As distribution of child pornography "is intrinsically related to the sexual abuse of children," United States v. Stevens, 559 U.S. 460, 471 (2010), the counseling services that the child pornography surcharge funds

19

will assist the victims of child pornography. Thus, the child pornography surcharge is also rationally related to this non-punitive purpose.

¶42 Accordingly, the child pornography surcharge is rationally connected to alternative non-punitive purposes; namely, funding investigations of sexual exploitation of children and possession of child pornography and providing grants to eligible public agencies or nonprofit organizations that provide counseling services to victims of sexual assault. As such, this factor weighs against characterizing the child pornography surcharge as punishment.

### vii. Is the surcharge excessive in relation to the alternative purpose?

¶43 "To determine whether the surcharge is excessive in relation to its non-punitive purpose, we must compare the amount of the surcharge with the overall expenses the State incurs because of the charged population's conduct." Williams, 381 Wis. 2d 661, ¶39. "The surcharge must be 'grossly disproportionate to the annual cost' to prove it is excessive." Id. (quoting Mueller v. Raemisch, 740 F.3d 1128, 1134 (7th Cir. 2014)). "We examine not 'whether the legislature has made the best choice possible to address the problem it seeks to remedy,' but 'whether the regulatory means chosen are reasonable.'" Id. (quoting Smith, 538 U.S. at 105).

¶44 Under this standard, we are not convinced the surcharge is excessive in relation to its non-punitive purposes. Schmidt argues that because the impact on an individual defendant may

20

exceed millions of dollars of liability, the child pornography surcharge is punitive in nature. However, the child pornography surcharge imposes $500 of liability per image. Schmidt and the State agree that the cost that child pornography imposes on society and victims is high. The money generated from the child pornography surcharge is specifically earmarked to alleviate those costs to society (via investigations) and to the victims (via grants for counseling services). See Wis. Stat. § 20.455(5)(gj).[8] The high cost of counseling for an individual victim can easily exceed the $500 amount of the child pornography surcharge. See, e.g., Paroline v. United States, 572 U.S. 434, 441 (2014) (addressing a child pornography victim's claim for $500,000 in future treatment and counseling costs for the defendant possessing two images depicting the victim). Similarly, the cost of investigating sexual exploitation of a child and possession of child pornography is expensive, especially as the technology for

---

[8] The child pornography surcharge generated an estimated $215,500 in 2018-19, of which $181,300 went to grants for counseling services for victims of sexual assault. See Legislative Fiscal Bureau Informational Paper #59, Crime Victim and Witness Services 10 (January 2019), https://docs.legis.wisconsin.gov/misc/lfb/informational_papers/january_2019/0059_crime_victim_and_witness_services_informational_paper_59.pdf.

sharing and storing child pornography increases in complexity and sophistication.[9]

¶45 When we consider the high cost of counseling for victims and the high cost to investigate child pornography, we are not convinced that the $500 child pornography surcharge per image of child pornography is excessive in relation to its non-punitive purposes. As such, this factor militates against characterizing the child pornography surcharge as punishment.

### 3. Summary

¶46 In sum, we conclude that the child pornography surcharge does not constitute punishment. Our application of the intent-effects test demonstrates that the primary function of the child pornography surcharge statute is not punitive nor is the child pornography surcharge punitive in effect. The text of Wis. Stat. § 973.042 does not evidence that the child pornography surcharge statute's primary function is punitive, and our review of the Mendoza-Martinez factors demonstrates that all but one factor——application to conduct already a crime——weigh in favor of our determination that the child pornography surcharge is not punitive in effect. Because of our conclusion that the child pornography surcharge is not punitive, the circuit court did not need to inform

---

[9] See Internet Crimes Against Children Task Force, Priority Needs For Our Top Priority: Kids 14-16 (May 3, 2007), https://www.doj.state.wi.us/sites/default/files/2007-news/icac-report.pdf (approximating costs to investigate internet crimes against children and estimating cost to investigate "all known IP addresses offering to share child pornography in Wisconsin" to be $82,888,395 in 2007).

Schmidt of the child pornography surcharge during the plea colloquy. See Fugere, 386 Wis. 2d 76, ¶20. Consequently, the circuit court did not err when it denied Schmidt's postconviction motion to withdraw his guilty plea.

B. The Child Pornography Surcharge Applies to Images of Child Pornography that Form the Basis of Read-in Charges.

¶47 Having determined that Schmidt was not entitled to withdraw his guilty plea, we now turn to his alternative argument that we should vacate part of the child pornography surcharge that the circuit court imposed. Wisconsin Stat. § 973.042 sets forth when a circuit court imposes a child pornography surcharge, which we repeat for context:

> If a court imposes a sentence or places a person on probation for a crime under [§§] 948.05 or 948.12[,] the court shall impose a child pornography surcharge of $500 for each image or each copy of an image associated with the crime. The court shall determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury.

§ 973.042(2) (emphasis added).

¶48 Schmidt argues that the circuit court could impose the child pornography surcharge only for the six images that formed the basis of his convictions, not for the eight additional images that formed the basis of the charges that were read-in at sentencing. To address Schmidt's argument, we interpret the language of the child pornography surcharge statute and conclude that a circuit court must impose the child pornography surcharge for images of child pornography that form the basis of read-in

23

charges of sexual exploitation of a child or possession of child pornography.

¶49 While the statute imposes mandatory language on the circuit court, the circuit court determined that only the 14 images that formed the basis of the charges were associated with Schmidt's possession of child pornography.  Consequently, we do not need to address, and we do not address in this case, whether the circuit court must impose the child pornography surcharge for images of child pornography that were not charged.

¶50 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect."  Kalal, 271 Wis. 2d 633, ¶44.  To do so, we begin with the plain language of the statute, stopping our inquiry there if the meaning of the statute is clear.  Id., ¶45.  When interpreting the language of a statute, the words are given their "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  Id.  Determining the common, ordinary, and accepted meaning of a word can be "acertain[ed] by reference to the dictionary definition."  Id., ¶53.

¶51 Also essential in a plain meaning analysis is the context and structure of the statute in which the operative language appears.  Id., ¶46.  "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable

24

results." Id. Moreover, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning," and we do not need to consult extrinsic sources. Id. (quoted source omitted)

¶52 Turning to the facts of this case, the circuit court imposed the child pornography surcharge for the 14 images of child pornography charged. Schmidt concedes that he is liable for the surcharge for the six images of child pornography that formed the bases for his six convictions of possession of child pornography. With respect to the other eight images of child pornography that formed the basis of the dismissed and read-in charges, Schmidt and the State disagree solely about whether those images were "associated with the crime" as that phrase is used in Wis. Stat. § 973.042(2). Thus, we must determine the plain meaning of the phrase "associated with the crime" before determining whether the circuit court must impose the child pornography surcharge for images of child pornography that form the basis of read-in charges

25

of sexual exploitation of a child or possession of child pornography.[10]

¶53 As the term is used in Wis. Stat. § 973.042(2), to associate is "to connect or bring into relation, as thought, feeling, memory, etc."[11] Random House Unabridged Dictionary 126 (2d ed. 1983). Beyond the definition of associate, we must also determine what "the crime" means as used in § 973.042(2). A straightforward reading of § 973.042(2) indicates that "the crime" refers to the offenses of conviction previously mentioned in the sentence, namely, sexual exploitation of a child and possession of child pornography. See § 973.042(2) (requiring that circuit court impose the child pornography surcharge "[i]f a court imposes a sentence or places a person on probation for a crime under [§§] 948.05 or 948.12"); Paroline, 572 U.S. at 445 (explaining

---

[10] Before imposing a child pornography surcharge, the circuit court must "determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury." Wis. Stat. § 973.042(2). After determining by a preponderance of the evidence the number of images associated with the crime, the circuit court must impose the child pornography surcharge for those images of child pornography. Id. Here, the parties do not dispute that the circuit court found by a preponderance of the evidence that the 14 images of child pornography charged were associated with the crime of possession of child pornography.

[11] This dictionary's definition is consistent with the definition of "Associate" from other dictionaries. See, e.g., Webster's Third New International Dictionary 132 (1986) ("to join or connect in any of various intangible or unspecified ways"); The American Heritage Dictionary of the English Language 112 (3d ed. 1992) ("To connect in the mind or imagination"); Oxford English Dictionary, https://www.oed.com/view/Entry/11976?rskey=2n1wss&result=2&isAdvanced=false#eid ("Connected in thought, mentally related").

26

that the use of the term "a crime" refers to the "offense of conviction"). So a child pornography surcharge must be imposed for an image of child pornography if that image is connected or brought into relation with the convicted individual's offense of sexual exploitation of a child or possession of child pornography.

¶54 Applying this understanding of "associated with the crime," it is clear that a circuit court must impose the child pornography surcharge for images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography. Those images of child pornography are specifically connected to and brought into relation with the convicted individual's offense of either sexual exploitation of a child or possession of child pornography because those images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography can be considered for restitution or as a factor at sentencing for the crime. See State v. Sulla, 2016 WI 46, ¶44, 369 Wis. 2d 225, 880 N.W.2d 659 (explaining effect of read-in charges). As such, images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography are sufficiently related to the offenses of sexual exploitation of a child or possession of child pornography for a circuit court to impose the child pornography surcharge for those images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography.

¶55 Moreover, the facts of this case demonstrate that the images of child pornography that formed the basis of Schmidt's

27

read-in charges of possession of child pornography were connected to and brought into relation with Schmidt's offense of possession of child pornography. The images that formed the basis of Schmidt's read-in charges were collected at the same time and found on the same devices as the images that formed the basis of Schmidt's conviction of possession of child pornography. Such a connection between the images of child pornography that formed the basis of Schmidt's read-in charges of possession of child pornography and Schmidt's offense of possession of child pornography was sufficient for the circuit court to impose the child pornography surcharge for those images of child pornography that formed the basis of Schmidt's read-in charges of possession of child pornography.

¶56 Schmidt argues that this reading is incorrect for two reasons. First, he asserts that this reading renders superfluous part of the statute——specifically, "if a court imposes a sentence or places on probation for a crime under [§§] 948.05 or 948.12"—— so Schmidt contends that the child pornography surcharge must apply only to images of child pornography that form the basis of actual convictions for the crime (hereinafter "per conviction basis"). Second, he asserts that the child pornography surcharge statute does not include a specific provision for read-in charges, as it does in other statutes. We disagree with both arguments.

¶57 The plain language of the child pornography surcharge statute reveals that it does not apply on a per conviction basis. The circuit court must impose the surcharge for each image of child pornography "associated with the crime." Wis. Stat. § 973.042(2).

28

As explained above, "associated with the crime" refers to a connection or relation to the convicted individual's <u>offense</u> of sexual exploitation of a child or possession of child pornography, which is broader than the individual's <u>conviction</u> for either of those crimes. Moreover, several other surcharge statutes use the per conviction formulation. <u>See, e.g.</u>, § 973.043(1) (imposing a drug offender diversion surcharge "for each conviction"); § 973.045(1) (imposing a crime victim and witness assistance surcharge for each count "on which a conviction occurred"); § 973.046(1r) (imposing a DNA analysis surcharge "for each conviction"). Despite the common usage of "conviction" as the basis for a surcharge, the child pornography surcharge does not include that formulation. <u>See</u> Wis. Stat. § 973.042(2). Such different language shows that the child pornography surcharge was not meant to apply on a per conviction basis as Schmidt argues. <u>See</u> Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 170 (2012) (explaining the Presumption of Consistent Usage canon of construction, which in part dictates that "a material variation in terms suggests a variation in meaning"); <u>Estate of Miller v. Storey</u>, 2017 WI 99, ¶35 n.14, 378 Wis. 2d 358, 903 N.W.2d 759 (same).

¶58 Additionally, Schmidt asserts that the child pornography statute cannot apply to images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography because the child pornography surcharge statute does not specifically include or refer to read-in charges. The restitution statute, Wis. Stat. § 973.20,

29

specifically requires restitution be paid to victims of read-in crimes.[12] While the language in the restitution statute is similar to the language of the child pornography surcharge statute, the child pornography statute is not imposed for the crime itself or for charges of the crime, as the restitution statute requires; rather, the child pornography statute is imposed on a per image basis instead of based on the crime itself. Compare § 973.20 (requiring restitution for any crime for which the defendant was convicted and any read-in crime) and § 973.042(2) (requiring the child pornography surcharge for "each image or each copy of an image associated with the crime"). Multiple images of child pornography may be part of a conviction for a singular count of possession of child pornography. See Paroline, 572 U.S. at 441 (requiring restitution for a victim of child pornography despite the images of child pornography depicting the victim not forming the basis of the conviction).

¶59 Limiting the language of the child pornography surcharge statute as strictly as Schmidt proposes would render the surcharge

_____

[12] Pursuant to Wis. Stat. § 973.20(1r), the circuit court "shall order [a] defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing." A "[c]rime considered at sentencing" includes "any read-in crime." § 973.20(1g)(a). A "read-in crime" is

> any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

§ 973.20(1g)(b).

30

effectively a per conviction surcharge, which, as we explained above, is an improper reading of the child pornography surcharge statute. Instead, the child pornography surcharge applies for every image of child pornography associated with the convicted individual's sexual exploitation of a child or possession of child pornography regardless of whether those images form the basis of either a convicted charge or a read-in charge.

¶60 Accordingly, we also conclude that the child pornography surcharge applies to images of child pornography that 0 basis of read-in charges of sexual exploitation of a child or possession of child pornography, so long as those images of child pornography are connected to and brought into relation with the convicted individual's offense of sexual exploitation of a child or possession of child pornography. Here, the circuit court applied the child pornography surcharge to images of child pornography that were connected to Schmidt's offense of possession of child pornography by the nature of those images forming the basis of Schmidt's read-in charges of possession of child pornography. Accordingly, we affirm the circuit court's determination and imposition of the child pornography surcharge for the images of child pornography that formed the basis of Schmidt's read-in charges of possession of child pornography.

## IV. CONCLUSION

¶61 We conclude that the child pornography surcharge is not punitive, so the circuit court did not need to inform Schmidt of the child pornography surcharge during the plea colloquy.

Consequently, the circuit court did not err when it denied Schmidt's postconviction motion to withdraw his guilty plea. We also conclude that the child pornography surcharge applies to images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography, so long as those images of child pornography are connected to and brought into relation with the convicted individual's offense of sexual exploitation of a child or possession of child pornography. Accordingly, we affirm the circuit court's judgment imposing the child pornography surcharge for 14 images of child pornography, and the order that denied plea withdrawal.

*By the Court.*—The judgment and order of the circuit court are affirmed.

¶62 PATIENCE DRAKE ROGGENSACK, J. *(concurring).* I join the majority opinion and write in concurrence to emphasize that the majority opinion affirms and employs those principles of statutory interpretation mandated in <u>Kalal v. Circuit Court for Dane Cnty.</u>, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110, throughout its statutory analysis. That the majority opinion follows <u>Kalal</u> while interpreting Wis. Stat. § 973.042(2) and applying a process known as the "intent-effects test" to determine whether the statutory surcharge is punitive, is important to the scholarship of our jurisprudence.

¶63 For years, we interpreted statutes by attempting to determine the intent of the legislature. <u>Id.</u>, ¶38. At the same time, we, and other courts, held that a court must presume that statutory meaning is derived through the words that the legislature chose. <u>Id.</u>, ¶39. In <u>Kalal</u>, we settled that conflict by holding, "It is the enacted law, not the unenacted intent, that is binding on the public. Therefore, the purpose of statutory interpretation is to determine what the statute means." <u>Id.</u>, ¶44.

¶64 Given our agreed upon focus, we provided a general structure for determining statutory meaning. We began with the "language of the statute." <u>Id.</u>, ¶45. We gave words chosen by the legislature their common meaning unless they were technical or specially-defined words. <u>Id.</u> "If the meaning of the statute [was] plain, we ordinarily [stopped] the inquiry." <u>Id.</u> We explained that "[c]ontext is important to meaning." <u>Id.</u>, ¶46. Furthermore, unless the words chosen by the legislature created an ambiguous statute, we concluded our analysis with the plain meaning of the

1

words chosen. Id. However, statutory ambiguity moved us into additional aids in determining statutory meaning. Id., ¶¶47-49.

¶65 Statutory interpretation in the matter before us creates a special challenge that we not slide backwards into interpreting Wis. Stat. § 973.042(2) by determining the intent of the legislature. It is especially challenging here because we employ a process, which the United States Supreme Court named the "intent-effects test," to determine whether § 973.042(2) is punitive.[1]

¶66 The majority opinion meets this challenge by interpreting the "intent" part of the test as requiring us to determine the statute's "primary function," "as expressed in the plain text of the statute."[2] As the majority opinion explains, "[i]f the statute's primary function is not punitive," we then turn to the "effects" part of the test.[3]

¶67 This methodology is faithful to our mandate in Kalal. I would have renamed the intent-effects test for use in Wisconsin as the "primary function-effects test" so that future courts faced with determining whether a statute is punitive would have immediate direction on the manner in which that determination is made. A majority of the court decided not to do so.

¶68 Therefore, I write in concurrence with the hope that this writing will be of assistance in regard to future analyses and applications of the intent-effects test. Accordingly, I respectfully concur.

---

[1] Majority op., ¶22.

[2] Id., ¶23.

[3] Id.

2

¶69  I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

¶70 BRIAN HAGEDORN, J. *(concurring in part, dissenting in part).* Anthony M. Schmidt pled guilty to six counts of possession of child pornography, each conviction based on one image. The circuit court correctly imposed a $500 child pornography surcharge for each of these six images. However, it also imposed child pornography surcharges for eight images associated with eight separate counts of possession of child pornography that were dismissed as part of the plea and read in at sentencing. While I agree with the majority that the circuit court did not err by failing to advise Schmidt of these surcharges when he entered his plea,[1] the majority erroneously upholds surcharges for images beyond those "associated with the crime" for which sentence was imposed, which is all that Wis. Stat. § 973.042(2) (2019-20)[2] authorizes. Because the majority misreads the law, I respectfully dissent to this conclusion.

¶71 We begin, as we should, with the statute's text:

> If a court imposes a sentence or places a person on probation for a crime under [Wis. Stat. §§] 948.05 or 948.12 and the person was at least 18 years of age when the crime was committed, the court shall impose a child pornography surcharge of $500 for each image or each copy of an image associated with the crime. The court shall determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury.

---

[1] I join Parts I, II, and III.A. of the majority opinion.

[2] All subsequent references to the Wisconsin Statutes are to the 2019-20 version.

Wis. Stat. § 973.042(2).[3] This statutory language contains a statement establishing two conditions, followed by mandatory duties arising from the satisfaction of the conditions.

¶72 The two conditions triggering a child pornography surcharge are: (1) the court must impose a sentence or place a person on probation for committing certain crimes; and (2) the person must have been at least 18 years old when the crime was committed. The second condition is not at issue here, but the first is. The crimes for which a surcharge must be assessed (provided a sentence or probation is imposed) are those under Wis. Stat. §§ 948.05 and 948.12. Both are located in a chapter that defines various crimes against children.

¶73 Wisconsin Stat. § 948.12 criminalizes possession of child pornography. This can include possessing, accessing, exhibiting, or playing recordings of a child engaged in sexually explicit conduct. § 948.12(1m), (2m). Although each individual photograph may be charged as a separate crime,[4] nothing in this statute requires that each image must be separately charged. We see this in State v. Van Buren, where the defendant was convicted of a single charge of possession of child pornography even though over 51,000 images were found on his computer and multiple photographs were introduced to support the lone charge. 2008

---

[3] "In this section, 'image' includes a video recording, a visual representation, a positive or negative image on exposed film, and data representing a visual image." Wis. Stat. § 973.042(1).

[4] See State v. Multaler, 2002 WI 35, ¶64, 252 Wis. 2d 54, 643 N.W.2d 437.

2

WI App 26, ¶¶1, 4, 14, 307 Wis. 2d 447, 746 N.W.2d 545. So while possession of child pornography may be charged on a one-image, one-crime basis as it was here, the law does not require it.

¶74 The second statute defining crimes that can trigger the child pornography surcharge is Wis. Stat. § 948.05, which criminalizes sexual exploitation of a child. This can take the form of employing, using, persuading, inducing, enticing, or coercing a "child to engage in sexually explicit conduct for the purpose of recording or displaying" the conduct. § 948.05(1)(a). It can also be violated by recording or displaying a child engaging in such conduct. § 948.05(1)(b). And one can commit a crime under this section by producing, performing in, profiting from, promoting, importing, reproducing, advertising, selling, distributing, or possessing with intent to sell or distribute "any recording of a child engaging in sexually explicit conduct." § 948.05(1m). Further, if someone responsible for the child's welfare "knowingly permits, allows, or encourages" a child to engage in recorded sexual conduct, they too can be charged under this section. § 948.05(2). This scope of behavior is broad, and importantly for our purposes, the crimes are not necessarily one-image offenses. For example, a person could be charged and convicted of one count of sexual exploitation of a child under Wis. Stat. § 948.05(1m) for selling a hard drive containing various pictures and videos depicting a child engaging in sexual acts. The important takeaway is that one conviction under the various crimes itemized in § 948.05 can involve multiple images for a single conviction.

3

¶75 When a defendant is over 18 and receives a sentence or probation following conviction under Wis. Stat. §§ 948.05 or 948.12, the conditions are satisfied and "the court shall impose a child pornography surcharge of $500 for each image or each copy of an image associated with the crime." Wis. Stat. § 973.042(2). This phrase reveals three key principles.

¶76 First, the surcharge "shall" be imposed; it is mandatory. State v. Cox, 2018 WI 67, ¶11, 382 Wis. 2d 338, 913 N.W.2d 780 ("The general rule is that the word 'shall' is presumed mandatory when it appears in a statute." (quoting another source)). The statute leaves the court no room to refuse to impose surcharges, or to impose a smaller surcharge if the fine becomes onerous. Each image associated with the crime must result in a $500 surcharge without exception.

¶77 Second, the surcharge is assessed per image, not per conviction. This reflects that a single conviction under the relevant sections can involve multiple images of child pornography. Since the surcharge must be assessed for every image associated with the conviction, the statute provides a mechanism to count the number of images. The final sentence of Wis. Stat. § 973.042(2) provides: "The court shall determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury." Consider again a one-count conviction under Wis. Stat. § 948.05(1m) for selling a hard drive containing various pictures and videos depicting a child engaging in sexual acts. Under the law, the court's job is to determine how many individual images were on the hard drive and

4

impose the surcharge for each image. If the hard drive contained ten images, the surcharge for the lone conviction would be $5,000 ($500 per image). The court's inquiry is a factual one.

¶78 Third, the surcharge must be assessed only for images "associated with the crime." Critically, the statute ties the images to "the crime"——not a crime that could have been charged but wasn't, or a related crime, or a charged but dismissed crime, but the crime. Which one? The crime mentioned in the beginning of the section——the crime for which the court "imposes a sentence or places a person on probation." Wis. Stat. § 973.042(2). The phrase "associated with" is not an invitation to the court to sweep in images unrelated to the specific crime for which a sentence or probation is imposed under either Wis. Stat. §§ 948.05 or 948.12. The legislature, understanding that the crimes triggering a surcharge can involve multiple images, used the phrase "associated with" to clarify that the surcharge must be assessed per image, not per conviction.

¶79 Related statutes reinforce this plain reading.[5] Four other surcharge statutes immediately following the child pornography surcharge in Chapter 973 begin the same way: "If a court imposes a sentence or places a person on probation." See Wis. Stat. §§ 973.042(2); 973.043(1); 973.045(1); 973.0455(1); 973.046(1r). The drug offender diversion surcharge assesses "$10

---

[5] State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶49, 271 Wis. 2d 633, 681 N.W.2d 110 ("A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes——that is, from its context or the structure of the statute as a coherent whole.").

for each conviction." § 973.043(1). Similarly, the crime prevention funding board surcharge is "calculated by adding up, for each misdemeanor or felony count on which a conviction occurred, $20." § 973.0455(1). The crime victim and witness assistance surcharge imposes a total surcharge based on adding the number of felony counts ($92 per felony) and misdemeanor counts ($67 per misdemeanor) "on which a conviction occurred." § 973.045(1). Finally, the deoxyribonucleic acid analysis surcharge is calculated as $250 for "each conviction" of a felony and $200 for "each conviction" of a misdemeanor. § 973.046(1r). Unlike the per-conviction surcharges in these neighboring statutes, the child pornography surcharge focuses on images "associated with the crime."

¶80 But that's not all. The restitution statute, also located in Chapter 973, provides a vital contextual clue. When ordering restitution, the circuit court does not look merely at the crime a defendant was convicted of. Rather, the statute creates a broader technical phrase called the "Crime considered at sentencing." Wis. Stat. § 973.20(1g)(a). This phrase is defined to mean "any crime for which the defendant was convicted and any read-in crime." Id. And read-in crime

> means any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

§ 973.20(1g)(b).

6

¶81 The legislature expressly incorporated read-in counts for restitution, but it made no reference to read-in charges in Wis. Stat. § 973.042(2). If the legislature had meant to include images associated with read-in charges here, it surely could have, and likely would have, used language similar to the restitution statute.[6] The restitution statute's direct reference to read-in crimes buttresses the conclusion that images associated with read-in crimes should not be subject to the $500 child pornography surcharge.

¶82 This statutory context demonstrates that the surcharge does not apply to images associated only with read-in crimes, nor is it assessed on a per-conviction basis. Faced with this evidence, the majority chooses to read "associated with the crime" as a vague phrase that could encompass just about any image a judge might wish to include, so long as the images have some ill-defined connection to a conviction for possession of child pornography or sexual exploitation of a child. It frames its rule as follows: "So a child pornography surcharge must be imposed for an image of child pornography if that image is connected or brought into relation with the convicted individual's offense of sexual exploitation of a child or possession of child pornography." Majority op., ¶53. What does this include? I'm not sure. The majority isn't quite sure either and limits its analysis to the facts of this case. Id., ¶49. But the majority expands the child pornography surcharge's reach to images beyond those connected to

_____

[6] The same definition is also found in Wis. Stat. § 973.049, which applies to restrictions on contact during sentencing. See Wis. Stat. § 973.049(1)(b).

7

the crime itself, and nothing in its rule offers discernable boundaries separating images that must be included from those that must be excluded. The majority reframes the statute to reach an open-ended group of images for which the circuit court must——again, the surcharge is not optional——count and assess the surcharge. This is not what the law requires.

¶83 The far more reasonable reading of the law is that the legislature chose to assess a surcharge only for those images connected with the specific crime under Wis. Stat. §§ 948.05 or 948.12 for which a sentence or probation is imposed. That is the language the statute uses, and it makes sense. This does not include images related to crimes for which a defendant has not been found guilty, whether read-in charges or images discovered during the investigation but not associated with the crime of conviction itself. This limits the images to a known and discernable set——namely, those associated with the specific crime of conviction, evidence a court can readily examine to determine how many images were associated with each conviction.[7]

---

[7] While the text is sufficient to resolve the interpretive inquiry on its own, legislative history confirms this reading. See Kalal, 271 Wis. 2d 633, ¶51. The drafting file for the legislation that created Wis. Stat. § 973.042(2) contains an email exchange between a Legislative Reference Bureau (LRB) drafter and a legislative aide preparing the bill. The correspondence contains a discussion about how to count the number of images assessed under § 973.042(2)'s per-image surcharge. The LRB drafter explained his understanding as follows:

> I assume that the surcharge should also apply to crimes under [Wis. Stat. §] 948.05 (which covers the creation of child pornography——as well as parents who allow children to participate in the making of child pornography). In those cases, should I link the surcharge to the number of copies that are produced,

¶84 In sum, the text and statutory context reveal that the surcharge applies to images associated with the crime for which sentence or probation is imposed. The surcharge does not apply to images associated only with charges dropped and read in as part of a plea, or to images collected in the investigation, or to images that might be captured by the majority's nebulous, open-ended approach. Applying these principles here means that the circuit court should have assessed the child pornography surcharge for only the six images tied to the six counts Schmidt pled guilty to and for which the circuit court imposed a sentence. Schmidt should not have been assessed a $500 child pornography surcharge for each of the eight images tied to the eight counts read in at sentencing

---

> distributed...? Obviously a producer or distributor has control over the number of copies that are produced and distributed. Counting becomes difficult for cases under [§] 948.05(3) (allowing a child to participate) or for cases in which the person is charged is an employee of a distributor. One option is to just specify that the surcharge is imposed for each copy of the image associated with the offense and let the court determine whether a particular copy is "associated with" the offense in question.

Drafting File, 2005 A.B. 942, Legislative Reference Bureau, Madison, Wis. The aide replied that this was what the legislator wanted. Id.

This drafting confirms the most straightforward reading of the text. The drafters chose their words to assess the per-image surcharge solely for the images that form the basis for the crime the defendant is convicted of ("the offense in question"), not images related to the investigation or to dismissed charges. And the drafting difficulty was in crafting language that would encompass some crimes where the number of images connected to a specific count would be difficult to determine—particularly those under Wis. Stat. § 948.05. The resolution? A surcharge for each image "associated with the crime," with the court determining this factual question.

9

because these images were not "associated with the crime[s]" for which Schmidt was sentenced.

¶85 While I join the majority's conclusion that the circuit court did not err by failing to advise Schmidt of these surcharges when he entered his plea, I respectfully dissent from its flawed interpretation and application of Wis. Stat. § 973.042.

¶86 I am authorized to state that Justices ANN WALSH BRADLEY and REBECCA FRANK DALLET join this concurrence/dissent.